IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03158-MSK-CBS

ANN MILLER,
    Plaintiff,
v.

GREGORY EXCELL,
STRATFORD PEAKVIEW L.P., and
GREP SOUTHWEST, LLC,
    Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on "Defendants' Stratford Peakview, LP and GREP Southwest, LLC [Motion] to Dismiss Pursuant to FRCP 12(B)(6) [sic]" (filed January 15, 2013) (Doc. # 9). Pursuant to the Order Referring Case dated January 3, 2013 (Doc. # 8) and the memorandum dated February 21, 2013 (Doc. # 11), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Proceeding *pro se*, Ms. Miller initiated this lawsuit on December 4, 2012, alleging jurisdiction based on diversity of citizenship. She alleges two state law claims for Intentional Infliction of Emotional Distress and Interference with Contractual Relations against Defendants Stratford Peakview, LP ("Stratford") and GREP Southwest, LLC ("Southwest") and a third state law claim for Breach of Contract against Defendant Excell. (*See* Complaint (Doc. # 1) at 3-5 of 6). Defendant Stratford is the owner of the apartment complex known as Stratford Station. Defendant Southwest is the property manager for Stratford Station. Defendant Excell was a tenant at Stratford Station.

    Ms. Miller's claims arise out of a sublease agreement she alleges she had with Defendant Excell. She alleges that she was prevented from leasing at Stratford Station based on her failure to pass a background check. (*See* Doc. # 1 at 4 of 6).

> In October 2012, I paid Gregory Excell $1000 to sublease an apartment from him. We both signed a written lease. [Three] days later he defaulted. He said the management company said I could not live there because I had a conviction for Negligent, No Injury Child Abuse, when I left my son alone when he was asleep for 20 minutes.

(*See* Doc. # 1 at 2 of 6). Ms. Miller seeks $561,000.00 in damages. (*See id.* at 6 of 6).

II.     Standard of Review

Defendants Stratford and Southwest move to dismiss Ms. Miller's two claims against them pursuant to Fed. R. Civ. P. 12(b)(6), which states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." On February 24, 2013, the court directed Ms. Miller to file any response she had to the Motion to Dismiss on or before March 18, 2013. (*See* Minute Order (Doc. # 12)). To date, Ms. Miller has not filed any response to the Motion. The court's records reflect that her copy of the February 24, 2013 Minute Order setting the response deadline was not returned in the mail as undeliverable.

"[A] district court may not grant a motion to dismiss for failure to state a claim merely because [a party] failed to file a response." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (internal quotation marks and citation omitted). "This is consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Issa*, 354 F.3d 1177-78 (internal quotation marks and citations omitted). "Consequently, even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Id.*

> Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although detailed factual allegations are not required, a complaint must contain more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Rather, a complaint must have sufficient factual assertions to raise a right to relief above the speculative level. Second, because a court is not bound to accept as true a legal conclusion couched as a factual allegation, it must first identify and disregard averments that are no more than conclusions [which] are not entitled to the assumption of truth. A court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether they plausibly give rise to an entitlement to relief.

2

*Schmaltz v. Zavaras*, No. 08-cv-00134-MSK-CBS, 2010 WL 466149, at * 2 (D. Colo. Feb. 7, 2010) (internal quotation marks and citations omitted).

Because Ms. Miller appears *pro se*, the court construes her pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English." *Schmaltz v. Zavaras*, 2010 WL 466149, at * 2 (citation omitted). "Pro se status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court." *Id.* (citations omitted). "[T]he generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012)(citation omitted). Although the court does not "hold the pro se plaintiff to the standard of a trained lawyer," it nonetheless relies on "the plaintiff's statement of his own cause of action." *Id.* (internal quotation marks and citations omitted). Thus, the court "may not rewrite a [complaint] to include claims that were never presented." *Id.* A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.   Analysis

A.   Second Claim for Relief for Intentional Infliction of Emotional Distress

Defendants Stratford and Southwest argue that Ms. Miller fails to state a claim upon which relief can be granted for intentional infliction of emotional distress because she does not sufficiently


allege any conduct that rises to the level of being extreme and outrageous.[1] The court decides in the first instance whether the facts alleged rise to the level of a claim for intentional infliction of emotional distress. *Widdifield v. Robertshaw Controls Co.*, 671 P.2d 989, 991 (Colo. App. 1983) (citation omitted). *See also English v. Griffith*, 99 P. 3d 90, 93 (Colo. App. 2004) ("the trial court is initially responsible for determining whether reasonable persons could differ on the question" whether conduct is outrageous) (citation omitted); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) ("trial court must initially rule on the threshold issue of whether the plaintiff's allegations of outrageous conduct are sufficiently outrageous as a matter of law: Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question.") (internal quotation marks and citation omitted). If allegations fail to meet the standard of atrocious and intolerable behavior, the matter cannot be submitted to a jury. *Widdifield*, 671 P.2d at 991. *See also Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1146 (D. Colo. 2000) ("Where it is clear to the court that the conduct complained of cannot be considered as rising to the egregious standard required, a claim for outrageous conduct is properly dismissed.").

> In Colorado, an intentional infliction of emotional distress claim requires a showing that the defendant (i) intentionally or recklessly; (ii) engaged in extreme and outrageous conduct; (iii) that caused severe and emotional distress. For liability to attach, the conduct alleged must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Madison Services Co., LLC v. Gordon*, No. 09-cv-02369-MSK-KMT, 2010 WL 3529588, at * 8 (D. Colo. Sept. 2, 2010) (internal quotation marks and citations omitted). The tort of intentional infliction of emotional distress "is intended to reach a very narrow type of conduct" and "the level of outrageousness required to create liability is extremely high."
*Llewellyn*, 622 F. Supp. 2d at 1070 (internal quotation marks and citations omitted).

The court determines that the facts pled by Ms. Miller do not rise to the level required to state a claim for intentional infliction of emotional distress. First, Ms. Miller has not adequately

---

[1] Intentional infliction of emotional distress is also referred to as outrageous conduct. *Llewellyn v. Shearson Financial Network, Inc.*, 622 F. Supp. 2d 1062, 1068 (D. Colo. 2009).

alleged that Defendants Stratford or Southwest acted "with the purpose of causing" her severe emotional distress or knowing their conduct was "certain or substantially certain to have that result." *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994).

> A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result. A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person.

*Culpepper*, 877 P.2d at 882 (citation omitted). *See also* CJI-Civ. 3d 23:1. Ms. Miller does not allege that Defendants Stratford or Southwest intended to cause her severe emotional distress or "chose a course of action with the knowledge of facts that would create a strong probability of injury" to her. *Id.*

Second, "outrageous conduct" is defined as conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Culpepper*, 877 P.2d at 882 (internal quotation marks and citation omitted). The tort of intentional infliction of emotional distress "contemplates an extreme level of independently ascertainable misconduct from which the 'ineluctable conclusion' is the calculated or reckless infliction of severe mental suffering." *Visor v. Sprint/United Management Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997) (*quoting Gard v. Telectronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994).

Ms. Miller alleges that Defendants did not approve her to sublet an apartment at the Stratford Station apartment complex, due to her failure to pass a background check based on her prior conviction for child abuse. She merely conclusorily alleges that Defendants' conduct was outrageous. (*See* Doc. # 1 at 4 of 6 ("Conduct was extreme and outrageous.")). Ms. Miller's allegations, even accepted as true, do "not rise to the level of conduct which may be characterized as 'atrocious and utterly intolerable in a civilized community.'" *Hewitt v. Pitkin County Bank and Trust Co.*, 931 P.2d 456, 459 (Colo. App. 1995). *See also Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 2011 WL 6091709, at *12 (Colo. App. Dec. 8, 2011) (stating that "the level of outrageousness required to constitute [the] tort of extreme and outrageous conduct is extremely

high . . . mere insults, indignities . . . and threats are insufficient."). Numerous courts have found that plaintiffs failed to state a claim for outrageous conduct or intentional infliction of emotional distress on facts more egregious than Ms. Miller's allegations. *See, e.g.*, *Horne v. TGM Associates, L.P.*, 56 So. 2d 615, 630-31 (Ala. 2010) (plaintiffs' contention that 10–day notice of termination of leases coupled with threats that they would be arrested, their personal property forcibly removed from their apartments, and/or their credit ruined by process of eviction did not constitute conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society") (citation omitted); *Hurricane v. Kanover, Ltd.*, 651 P.2d 1218, 1222 (Colo. 1982) (dismissing complaint for outrageous conduct and intentional or reckless infliction of emotional distress); *Clemente v. Horne*, 707 So. 2d 865, 866-67 (Fla. App. 1998) (finding tenants' constructive eviction from apartment without adequate alternative housing due to flooding and termite infestation did not rise to the level of extreme and outrageous conduct); *World City Foundation, Inc. v. Sacchetti*, 48 A.D. 3d 213, 214 (N.Y. App. Div. 2008) (Landlords' conduct in bringing nonpayment proceedings upon tenants' failures to timely pay rent did not amount to extreme and outrageous conduct necessary to support claim for intentional infliction of emotional distress); *Presser v. RCP Mayfield, LLC*, No. 92073, 2009 WL 1965255, at **1-3 (Ohio App. July 9, 2009) (Property manager's comments to apartment tenant's prospective new landlord that she would not consider renting to tenant in the future because of harassment of other residents and staff and because tenant would not agree with the terms of the signed lease did not constitute outrageous conduct or inflict severe emotional distress as required for tenant to maintain intentional infliction of emotional distress claim against property manager and apartment complex); *Straus v. Kirby Court Corp.*, 909 S.W. 2d 105, 109 (Tex. App. 1995) (finding that while an eviction is an unpleasant legal proceeding for both landlord and tenant, action taken pursuant to a lease contract generally does not rise to the level of outrageous conduct necessary to satisfy that element of intentional infliction of emotional distress) (citing Restatement (Second) of Torts § 46 cmt. g (1965)); *Sullivan v. Delisa*, No. CVN0091831FA, 2002 WL 523076, at ** 5-6 (Conn. Super. Jan. 10, 2002) (finding evidence insufficient for boarders forced to vacate their residence due to owner's sale of premises to prevail on their claim against the owner for

intentional infliction of emotional distress).  Even accepting as true Ms. Miller's allegations of Defendants' conduct, such conduct would not permit a jury to find that it was "utterly intolerable in a civilized community."  *Coors Brewing Co.*, 978 P.2d 663, 666 (Colo. 1999).

As the conduct of Defendants Stratford and Southwest alleged by Ms. Miller does not support at least two of the elements of a plausible claim for intentional infliction of emotional distress, Ms. Miller's Second Claim for Relief is properly dismissed.

B.   Third Claim for Relief for Interference with Contractual Relations

Defendants Stratford and Southwest argue that Ms. Miller fails to state a claim upon which relief can be granted for interference with contractual relations.

"Colorado Supreme Court precedents rely on the definition of the tort of intentional interference with contractual relations contained in § 766 of the Restatement (Second) of Torts (1977)."  *Slater Numismatics, LLC v. Driving Force, LLC*, No. 11CA0683, ___ P.3d ___, 2013 WL 2353847, at ** 3-4 (Colo. App. June 21, 2012).  "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."  *Id.* (internal quotation marks and citations omitted).  "To be liable for intentional interference with contract, a defendant must 1) be aware of a contract between two parties, 2) intend that one of the parties breach the contract, 3) and induce the party to breach or make it impossible for the party to perform the contract."  *Slater Numismatics*, 2013 WL 2353847, at *4 (internal quotation marks and citations omitted).

"For a claim of tortious interference with a contract to be viable, a valid contract must exist."  *Condo v. Conners*, 271 P.3d 524, 526 (Colo. App. 2010) (citations omitted).  Ms. Miller alleges she had a written contract with Defendant Excell to sublet his apartment located at Stratford Station.  (*See* Doc. # 1 at 2 of 6).  Pursuant to Mr. Excell's lease agreement, only he could occupy the

apartment. (*See* Apartment Lease Contract (Exhibit 1 to Defendants' Motion (Doc. # 9-1) at ¶ 2).[2] Mr. Excell could sublet his apartment only with the owner's approval of a replacement tenant and the owner's consent in writing. (*See id.* at ¶ 30). Ms. Miller alleges that the owner did not approve her as a replacement tenant to sublet Mr. Excell's apartment, due to her prior criminal conviction. (*See id.*). As her sublease agreement with Defendant Excell was contingent upon approval from the owner that was never given, she has not adequately alleged the existence of a valid contract between her and Defendant Excell.

Nor has Ms. Miller alleged that Defendants' improperly interfered with her agreement with Mr. Excell. Ms. Miller signed an acknowledgment that "[o]ur investigation includes criminal background screening" and "[i]t is possible your application may be denied due to criminal convictions or charges." (*See* Qualification Acknowledg[ ]ment (Exhibit 2 to Defendants' Motion (Doc. # 9-2)). To be actionable, "an interference with the performance of a contract must also be improper." *Mem'l Gardens*, 690 P.2d at 210. Ms. Miller merely alleges that based on her prior criminal conviction, Defendants did not approve her as a replacement tenant for Mr. Excell's apartment. Ms. Miller's allegations do not support a claim for intentional interference with contractual relations.

C.      Lack of Personal Jurisdiction over Defendant Excell.

Ms. Miller commenced this action *in forma pauperis* pursuant to 28 U.S.C. § 1915. (*See* December 5, 2012 "Order Granting Leave to Proceed Pursuant to 28 U.S.C. §1915" (Doc. # 4)). The Clerk of the Court initiated service of process on the Defendants. (*See* "Certificate of Service" (Doc. # 6)). On April 11, 2013, notice was filed with the court by the U.S. Marshal that Defendant Excell could not be served at the address provided in the Complaint. (*See* unexecuted return of service (Doc. # 13)).

"[S]ervice of process [under Fed. R. Civ. P. 4] provides the mechanism by which a court

---

[2]    In addition to the Complaint, the court may consider documents referred to in the Complaint if the documents are central to the Plaintiff's claim and the parties do not dispute the documents' authenticity. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Hukill v. Oklahoma Native American Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) (internal quotation marks and citation omitted). A court cannot obtain personal jurisdiction over a party without proper service of process. *See Murphy Brothers, Inc v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (citation omitted); *Oklahoma Radio Associates v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served") (citations omitted); *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case.").

Fed. R. Civ. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action:

> "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Defendant Excell has been named as the only Defendant in the First Claim for Relief since the filing of the Complaint on December 4, 2012. As of this date, 153 days have passed since the filing of the Complaint and Defendant Excell has not been served in this action and has not filed a waiver of service or appeared in the case.

Ms. Miller, as a *pro se* plaintiff proceeding *in forma pauperis,* may rely on the U.S. Marshal for service of the summons and complaint. Sufficient efforts were made by the Clerk of the Court and the U.S. Marshal to serve Defendant Excell. The court need not require the Clerk of the Court or the U.S. Marshal to search for or make any further attempts to serve Defendant Excell. Sufficient time has been afforded such that Defendant Excell may properly be dismissed without prejudice from this civil action for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and

pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

Accordingly, IT IS RECOMMENDED that:

1. "Defendants' Stratford Peakview, LP and GREP Southwest, LLC [Motion] to Dismiss Pursuant to FRCP 12(B)(6) [sic]" (filed January 15, 2013) (Doc. # 9) be GRANTED and Defendants Stratford and Southwest be dismissed from this civil action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

2. Defendant Excell be dismissed without prejudice from this civil action for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

3. No Defendants remaining in the case, this civil action be dismissed in its entirety.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*,

52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 7th day of May, 2013.

BY THE COURT:

   s/Craig B. Shaffer   
United States Magistrate Judge